IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 23, 2005

# STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. D.W.J.

**Appeal from the Juvenile Court for Sullivan County**
**No. 82043      James Beeler, Special Judge**
**Filed June 29, 2005**

---

**No. E2004-02586-COA-R3-PT**

---

This is a parental rights termination case. The mother appeals the trial court's decision terminating her parental rights to two of her three children. On appeal, the mother argues, *inter alia*, that the evidence preponderates against the trial court's finding that grounds for termination exist and that termination is in the best interest of the children. We conclude that the record does not contain sufficient evidence to support the trial court's decision and therefore, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed; Case Dismissed**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

David N. Darnell, Kingsport, Tennessee, for the Appellant, D.W.J.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee Department of Children's Services.

## OPINION

*I. Procedural History and Background*

D.W.J. ("Mother") has three children: R.S.W. (born on May 2, 1989), D.C.W. (born on May 6, 1990), and B.N.W. ( born on January 21, 1992). Only Mother's rights to R.S.W. and B.N.W. are at issue. The third child, D.C.W., remains in the custody of Mother.

On June 7, 2004, the Department of Children's Services (DCS) filed a petition to terminate the parental rights of the father and Mother as to R.S.W. and B.N.W. Following a hearing on August 25, 2004, the trial court entered a default judgment terminating the parental rights of the father based on clear and convincing evidence of abandonment. The father did not appeal. The trial court also

terminated Mother's parental rights to R.S.W. and B.N.W. based on proof of Mother's substantial noncompliance with the permanency plan and the removal of the children from Mother's home by court order for six months and Mother's failure to remedy the conditions which led to the children's removal. Mother appeals and argues that the trial court erred in terminating her parental rights to her two children and that the trial judge erred in not recusing himself.

## II. Standard of Review

We review the trial court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996).

A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-579 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). Although this right is fundamental and superior to claims of other persons and the government, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988)(*citing Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. *Id.*

Termination proceedings are governed by statute in Tennessee. Parties who have standing to seek the termination of a biological parent's parental rights must first prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1). Secondly, they must prove that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2). Because the decision to terminate parental rights has profound consequences, courts must apply a higher standard of proof in deciding termination cases. Therefore, to justify termination of parental rights, the party seeking termination must prove by clear and convincing evidence the ground (or grounds) for termination and that termination is in the child's best interest. Tenn. Code Ann. §36-1-113(c)(1); *In re Valentine*, 79 S.W. 3d 539, 546 (Tenn. 2002).

The heightened burden of proof minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of

the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at \*9 (Tenn. Ct. App. Aug. 13, 2003) *no appl. perm. filed*, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

Courts terminating parental rights are explicitly required to "enter an order which makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

### III. The Record on Appeal

The appellate record in this cause contains not only the pleadings in this termination case, but also all of the pleadings filed in the juvenile court during previous dependent-neglect proceedings involving Mother and many other unauthenticated documents placed in the juvenile court's file at some time during Mother's involvement with juvenile court. The trial court judge based his decision on documents filed with the court clerk, but never admitted into evidence. The transcript of the proceedings in the trial court does not reflect that *any* documents were filed as exhibits during the trial of this case. Tenn. R. Juv. P. 28 (c) provides that in adjudicatory hearings the court shall consider only evidence which has been formally admitted. "Formally admitted" does not mean filed with the court clerk. Tenn. Code Ann.§ 36-1-113(j) provides that in termination cases the courts shall admit evidence as permitted under the Tennessee Rules of Evidence and the Tennessee Rules of Juvenile Procedure.

Therefore, the trial court should not have based its decision on or relied on any documents that were not admitted into evidence. Likewise, in our review, we cannot consider any documents that are not properly included in the appellate record. Tenn. R. App. P. 8A(c) excludes from the record on appeal any portion of a juvenile court file of a child dependency, delinquency or status case that has not been properly admitted into evidence at the termination of parental rights trial, in addition to those papers excluded by Tenn. R. App. P. 24(a).[1] The appellate record in termination

---

1. Tennessee Rule of Appellate Procedure 24(a) excludes from the record the following documents: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any

cases should consist *only* of the following:

> (1) the petition to terminate parental rights and all pleadings and other papers subsequently filed with the lower court,
>
> (2) a transcript or statement of the evidence of the termination proceedings in the lower court,
>
> (3) the original of all exhibits filed in the lower court in the termination proceeding,
>
> 4) any other matter designated by a party and properly includable in the record on appeal.

*In re M.J.B.*, 140 S.W.3d 643, 651-652 (Tenn. Ct. App. 2004).

In our review, we will consider only documents which are properly contained in the appellate record. The documents in this record on appeal which are relevant and were properly admitted are the petition for termination, the order terminating the rights of Mother, and the transcript of the evidence. Unfortunately, this does not encompass many documents in the record which were not properly admitted into evidence, including the children's medical records, the permanency plans, and all pleadings in previous dependent-neglect cases involving Mother.

## IV. Grounds for Termination

### A. Substantial Noncompliance with the Permanency Plan

The trial court terminated Mother's parental rights to two of her children based on its determination that she had failed to comply with the permanency plan pursuant to Tenn Code. Ann. § 36-1-113 (g)(2) which provides:

> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4[.]

Substantial compliance with the statement of responsibilities in a child's permanency plan is essential. In order for DCS to terminate parental rights pursuant to this ground, DCS must first demonstrate that the requirements of the parenting plan with which Mother is expected to comply

purpose shall be clearly identified and treated as an exhibit.

–4–

are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place; and Mother's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. Minor, trivial, or technical deviations from a permanency plan will not be deemed to amount to substantial noncompliance. *In re M.J.B.*, 140 S.W.3d at 665-657.

In our review of this ground for termination, we begin first with a review of the permanency plan to determine if its requirements are reasonable and related to the conditions that caused the children to be removed; the efforts made by DCS to assist Mother in complying with the plan; and the extent of Mother's compliance with the plan. Needless to say, the permanency plan must be admitted into evidence before the trial judge can consider it and it must be properly included in the record on appeal before we can consider it. The permanency plan was not admitted into evidence at any time during the trial. It was filed with the juvenile court clerk at some point in either these proceedings or during the dependent-neglect proceedings. It is not proper to file documents with the clerk of the court and then attempt to rely on them at trial without having them admitted into evidence. Tenn. R. Juv. P. 28 (c) requires the proper admission of documents into evidence before they can be considered by the trial judge. Although various witnesses referred in their testimony to the permanency plan and its contents, their testimony was only an incomplete and vague description of the contents of the plan. Without the plan in evidence, the trial judge could not have properly made the required factual determinations regarding the plan. Without the plan in evidence, we do not have an adequate record from which to review the trial court's decision. DCS had the burden of producing clear and convincing evidence that the requirements of the permanency plan involving Mother's children were reasonable and related to remedying the conditions that necessitated the children's removal from her custody; that DCS had made reasonable efforts to assist Mother in complying with the plan; and that Mother had failed to substantially comply with the plan. Because we find that DCS failed to carry its burden of proof, we reverse the termination of Mother's rights based on noncompliance with the permanency plan.

### B. Removal for Six Months and Failure to Remedy Conditions

The second ground relied on by the trial court's to terminate Mother's parental rights was Tenn. Code Ann. § 36-1-113 (g)(3)(A) which provides:

> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at

an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

By the clear language of this statute, DCS was first required to prove that the children had been removed from Mother's home pursuant to a court order for a period of six months. DCS failed to prove this fact. The submission into evidence of a certified copy of the court order which removed the children from Mother's home would have been sufficient proof. We have no doubt that such an order existed in this case. However, no such offer of proof was made. There are passing references in the transcript to the children being removed from Mother's home and being in the custody of DCS. The county case manager, Jeannie Hammonds, testified that the children "were released to [Mother's] custody in August of 2003, and then they came back into custody in October of 2003." However, this does not amount to clear and convincing proof of a court order which removed the children from the Mother for a period of six months. DCS also attempted to prove the conditions that led to the children's removal and the Mother's failure to remedy same by relying on unauthenticated medical records of the children, unauthenticated records of criminal convictions, and pleadings and other documents from the juvenile court file from previous dependent-neglect cases involving Mother and the children - none of which were ever admitted into evidence. We can not assume the existence of facts that are not in the record. Having an adequate record on appeal is crucial in any case, but it is particularly essential in a termination case where we are asked to review the decision of a trial court that forever severs the legal bond between Mother and her two children. The constitutional magnitude of the rights involved in termination cases requires strict adherence to the evidentiary rules. *V.D. v. N.M.B.*, No. M2003-00186-COA-R3-CV, 2004 WL 1732323 at *4 (Tenn. Ct. App. July 26, 2004). Simply put, termination cases must be conducted properly and according to the rules of evidence and procedure at both the trial and appellate level. The rules of evidence and procedure cannot be relaxed, ignored, or overlooked in termination cases.

DCS had the burden of proving by clear and convincing evidence that the children had been removed from Mother's home by order of a court for a period of six months and that the conditions that caused the removal persisted. Because we find that DCS failed to carry its burden of proof, we reverse the termination of Mother's rights to her children based on the children's removal by court order for six months and Mother's failure to remedy the conditions that led to the removal.

Based upon our holding that none of the grounds for termination of Mother's parental rights were proven by DCS, we need not address whether there was sufficient proof regarding whether the termination was in the best interest of the children or whether the trial judge should have recused himself.

Accordingly, the judgment of the trial court is reversed, the petition for termination of

Mother's rights is dismissed, and the costs of the proceedings in the trial court and in this Court are taxed to the State of Tennessee, Department of Children's Services.


_____
SHARON G. LEE, JUDGE