SHARON G. LEE, J.,
delivered the opinion of the court,
in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.
OPINION
This appeal involves a petition filed by the Department of Children’s Services to terminate the parental rights of the mother to her three year old son. The Trial Court granted the petition and the mother appealed. We have determined that the Trial Court’s judgment must be vacated and remanded because the Trial Court *574 failed to make the specific findings of fact and conclusions of law on the issue of abandonment as required by Tenn.Code Ann. § 36-l-113(k). Further, we find that the Trial Court’s judgment must be reversed since there was not clear and convincing evidence for termination pursuant to Tenn.Code Ann. § 36-l-113(g)(3)(A). Therefore, we vacate in part, reverse in part and remand.
I. FACTUAL BACKGROUND
C.H.K., the Appellant in this case, gave birth to a son, J.W.P., on January 23, 2000. In January of 2002, C.H.K. and her minor son, moved from the State of Alabama to Nashville, Tennessee to reside with her father. When she arrived in Tennessee, however, she could not find her father. She stayed with her grandmother for a couple of weeks and then checked into the Econo Lodge motel in Nashville. Sometime thereafter, C.H.K. left her two year old son in the motel room allegedly with a woman she had met while both were incarcerated. This woman was never located nor was her identity ever confirmed. The Department of Children’s Services (hereinafter referred to as “D.C.S.”) received a referral on January 26, 2002, regarding J.W.P. and, upon investigation, found the two year old child alone in the motel room with cough syrup, trash, and several open glass containers of alcohol lying around the room easily accessible to the child. The child was taken to Vanderbilt Hospital where he was examined and released. The mother could not be located and D.C.S. took the child into its custody on that date and placed him in the foster home where he continues to reside.
The record indicates that C.H.K. first learned of her son’s removal by D.C.S. around 3:00 a.m. on Sunday, January 27, 2002. The next morning she went to D.C.S. offices where she was informed that on the following Thursday, January 31, 2002, a preliminary hearing would be conducted in Juvenile Court regarding her child’s custody. When C.H.K. appeared at the Juvenile Court hearing, she was arrested upon charges of attempted child neglect for the incident which occurred at the motel. Meanwhile, the preliminary custody hearing was held as scheduled and the Juvenile Court ordered that custody of J.W.P. remain with D.C.S.
In February of 2002, a permanency plan was developed with respect to J.W.P. which designated alternative goals of returning him to C.H.K., placing him with a relative or placing him for adoption. The plan was signed by C.H.K. and approved by the Juvenile Court on March 14, 2002.
At a hearing in the Juvenile Court on June 12, 2002, the Court referee found J.W.P. to be a dependent and neglected child. The referee further ruled that C.H.K.’s visitation with J.W.P. be suspended pending a further hearing on August 8, 2002. C.H.K. appealed this decision to the Judge of the Juvenile Court, which ruling was subsequently affirmed by the Juvenile Court on March 3, 2003.
On July 18, 2002, D.C.S. filed a petition to terminate C.H.K.’s parental rights upon grounds of abandonment, failure to follow permanency plan, and persistence of conditions.
On August 8, 2002, C.H.K. pled guilty in the Davidson County Criminal Court to the offense of attempted child neglect, a class E felony, arising out of the' motel incident. Also, on that date the Juvenile Court referee ordered that C.H.K’s visitation rights remain suspended, that D.C.S. be relieved of its responsibility to facilitate visitation between C.H.K. and J.W.P., and that the permanency plan be changed to reflect adoption as its sole goal. Although a new permanency plan was developed which complied with this ruling, this plan was not signed by C.H.K.
*575 D.C.S.’s petition to terminate parental rights was heard on October 1, 2003. On October 10, 2003, the Court entered its order terminating the parental rights of C.H.K. and “unknown father” under authority of Tenn.Code Ann. § 36-1-102(l)(A)(i), Tenn.Code Ann. § 36-1-113(G)(3)(A), and Tenn.Code Ann. § 36-1-113(1). The present appeal by the mother followed.
II.ISSUES FOR REVIEW
Issues presented for our review in this case are:
1. Is there clear and convincing evidence that C.H.K. abandoned J.W.P.?
2. Is there clear and convincing evidence of the persistence of conditions which would cause J.W.P. to be subjected to further neglect and, therefore, prevent J.W.P.’s safe return to the care of C.H.K.?
3. Is there clear and convincing evidence that the termination of parental rights is in J.W.P.’s best interest?
III.STANDARD OF REVIEW
Our standard of review in this non-jury case is de novo upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court’s conclusions of law. Campbell v. Florida Steel Corp., 919 S.W.2d 26 (Tenn.1996) and Tenn. R.App. P. 13(d). The trial court’s factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. Union Carbide Corp. v. Huddleston, 854 S.W.2d 87 (Tenn.1993).
IV.ABANDONMENT
We begin our analysis of the first issue as to whether there was clear and convincing evidence of abandonment by acknowledging the well-settled rule that “parents have a fundamental right to the care, custody and control of their children.” In re Drinnon, 776 S.W.2d 96, 97 (Tenn.Ct.App.1988). The United States Supreme Court has recognized the unique nature of proceedings to terminate parental rights, stating that “[f]ew consequences of judicial action are so grave as the severance of natural family ties.” M.L.B. v. S.L.J., 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473, (1996) (citing Santosky v. Kramer, 455 U.S. 745, 786, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). A “parent’s desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right”. Santosky, 455 U.S. at 759, 102 S.Ct. 1388. However, we are also compelled to recognize that this right is not without limitation and may be terminated if clear and convincing evidence supports termination under pertinent statutory authority. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Our courts have defined “clear and convincing evidence” as evidence which “eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence” and “produce[s] in the fact-finder’s mind a firm belief or conviction regarding the truth of the propositions sought to be established.” O’Daniel v. Messier, 905 S.W.2d 182, 188 (Tenn.Ct.App.1995).
Tenn.Code Ann. § 36-l-113(c) requires that termination of parental rights be based upon the following:
(1) A finding by the court by clear and convincing evidence that the grounds for termination [of] parental or guardianship rights have been established; and
(2) That termination of the parent’s or guardian’s rights is in the best interests of the child.
Tenn.Code Ann. § 36-l-113(g)(3)(A) provides that termination of the parental rights may be based upon the ground of *576 “abandonment” as further defined at Tenn. Code Ann. § 36-l-102(l)(A). The latter statute provides at subsection (iv) that, among other things, “abandonment” means the following:
A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent’s or guardian’s incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child. (Emphasis added.)
The Trial Court’s order of termination provides as follows:
Upon hearing the testimony and a review of the file, the Court amends the Petition to Terminate Parental Rights and hereby conforms the Petition to the proof presented at trial. The Court finds by clear and convincing evidence that the conditions which caused the child to be placed in the Department’s custody in January, 2002, continue, in that the mother is still not available to parent this child. By her own testimony, the mother admitted she has a lengthy criminal history. She has been arrested five (5) times between 1998 and 2002 for charges of statutory rape, theft of property under five hundred dollars ($500.00), theft of property over one thousand dollars ($1,000.00), violation of probation and DUI. [C.H.K.] has five children, none of whom are in her custody. Davidson County Juvenile Court terminated her parental rights to two of her children, [C.C.K.] and [C.A.K.] in 1998. The other two children are in custody of relatives and [J.W.P.]., as previously noted, has been in foster care continuously since January 2002. The record revealed [J.W.P.] was included in a safety plan in Alabama with his sister, [A.P.], in the home of her father, [W.PJ. The mother, [C.H.K.], left Alabama with [J.W.P.] without the consent of [W.P.] or the Alabama Department of Children’s Services. According to the mother’s own testimony she left [J.W.P.] in the care of a woman with whom she (the mother) met in jail. The woman was being held on a DUI. A few weeks after [J.W.P.] was brought into custody, the mother was arrested for DUI and leaving the scene. [C.H.K.] was recently denied parole, and won’t be eligible for parole until August, 2004. Pursuant to T.C.A. § 36-l-102(l)(A) “Abandonment” means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that ... (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (⅜) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (f) consecutive months immediately preceding such parent’s or guardian’s incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the tuelfare of the child. (Emphasis in the original.)
In In re Adoption of Muir, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3, 2003 Tenn.App. LEXIS 831, at *9 *577 (Tenn.Ct.App. November 25, 2003), no appl. perm, appeal filed, we discussed the duty of the trial court to enter written orders containing specific findings of fact and conclusions of law in termination cases as follows:
A trial court’s responsibility to make findings of fact and conclusions of law in termination cases differs materially from its responsibility in other civil cases. Generally, trial courts, sitting without juries, are not required to make findings of fact or conclusions of law unless requested in accordance with Tenn. R. Civ. P. 52.01. Termination cases, however, are another matter. Tenn.Code Ann. § 36-l-113(k) explicitly requires trial courts to “enter an order which makes specific findings of fact and conclusions of law” in termination cases. Thus, trial courts must prepare and file written findings of fact and conclusions of law with regard to every disposition of a petition to terminate parental rights, whether they have been requested or not.
Tenn.Code Ann. § 36 — 1—113(k) reflects the Tennessee General Assembly’s recognition of the necessity of individualized decisions in these cases. In re Swanson, 2 S.W.3d 180, 188 (Tenn.1999) (holding that termination cases require “individualized decision making”). It also reflects the General Assembly’s understanding that findings of fact and conclusions of law facilitate appellate review and promote the just and speedy resolution of appeals. Bruce v. Bruce, 801 S.W.2d 102, 104 (Tenn.Ct.App.1990).
[[Image here]]
When a trial court has not complied with Tenn.Code Ann. § 36-l-113(k), we cannot simply review the record de novo and determine for ourselves where the preponderance of the evidence lies as we would in other civil, non-jury cases. In accordance with In re D.L.B., 118 S.W.3d [360,] 365 we must remand the case for the preparation of appropriate written findings of fact and conclusions of law.
Although the Trial Court cites subsection (iv) of the statute as supporting authority for its decision to terminate parental rights in this case, the Trial Court’s order fails to set forth any findings which show either that C.H.K. was incarcerated on July 18, 2002, the date D.C.S. filed its petition instituting termination proceedings, or that she was incarcerated during all or part of the four months immediately preceding that date. Moreover, the Trial Court’s order fails to specify whether its decision is based upon a determination that C.H.K. wilfully failed to visit or support J.W.P. during the period immediately preceding her incarceration or, rather, upon a determination that C.H.K. engaged in conduct prior to her incarceration which demonstrated a wanton disregard for her child’s welfare. Although this paragraph concludes with the recitation of subsection (iv) of the statute, the second sentence indicates that the referenced supporting evidence shows a persistence of those conditions which caused J.W.P. to be removed from C.H.K.’s custody. Proof of persistence of conditions is not required under subsection (iv).
In light of these deficiencies, we are compelled to vacate the order of termination to the extent it is based upon a finding of abandonment under TenmCode Ann. § 36-l-102(l)(A)(iv) and we remand for preparation of findings of fact and conclusions of law as required by Tenn.Code Ann. § 36-l-113(k).
Y. PERSISTENT CONDITIONS
A second ground for the Trial Court’s termination of the mother’s parental rights was Tenn.Code Ann. § 36-1-113(g)(3)(A). The order provided as follows:
*578 The Court also finds by clear and convincing evidence that additional grounds exist for termination of Respondent [C.H.K’s] parental rights to the child pursuant to T.C.A. § 36-1-113(g)(3)(A) in that the said child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child’s removal or other conditions which in all reasonable probability would came the child to be subjected to further abuse or neglect and which, therefore, prevent the child’s safe return to the care of the parent or guardian still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(Hi) The continuation of the parent or guardian and child relationship greatly diminishes the child’s chances of early integration into a safe, stable and permanent home. (Emphasis in original.)
The order of the Trial Court indicates that the fact that C.H.K. was “unavailable” to care for J.W.P. was the condition which led to his removal from her custody and that such condition persisted at the time of trial in that C.H.K. remained unavailable as a consequence of her incarceration. We acknowledge that C.H.K. was unavailable to care for J.W.P. at the time of trial. The record also confirms the finding of the Trial Court that C.H.K. would not be eligible for parole until August, 2004, and, although the Court’s order does not so state, presumably the Court relied upon this finding in concluding that the condition of C.H.K.’s unavailability would not be remedied at an early date.
While it is true in a broad sense that J.W.P. was removed from the custody of his mother because she was unavailable to care for him, more precisely, J.W.P. was removed from his mother’s custody because she neglected him by leaving him alone in a motel room. The pertinent question is whether C.H.K. continues to neglect J.W.P. However, C.H.K. has not had custody of J.W.P. since his removal and has not been allowed visitation with him since suspension of visitation by the Juvenile Court referee in June of 2002. Accordingly, C.H.K. has not been presented with an opportunity to care for J.W.P. and it is not possible that she has demonstrated an intention to neglect him as she did when he was removed from her custody. Under these circumstances we disagree that it has been shown that the conditions which led to J.W.P.’s removal still persist. We recognize that TenmCode Ann. § 36 — 1—113(g)(3)(A) also provides that termination may be based upon the existence of “other conditions which in all probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child’s safe return to the care of the parent.” However, it is our determination that the legislature did not intend that the incarceration of a parent constitutes a condition which would cause the child to be subject to abuse or neglect except under specified circumstances. We are compelled to reach this conclusion because Tenn. Code Ann. § 36 — 1—113(g)(6) allows initiation of parental termination if “[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten(10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.” We believe that this subsection of the statute manifests an intent that there must be proof that the parent is incarcerated under a sentence of at least ten years before the mere fact of incarceration will constitute grounds for termination of parental rights. *579 Such proof has not been presented in this case.
It is clear to us that C.H.K. has been guilty at times of poor parenting and bad judgment. We do not condone her conduct; however, we must follow the dictates of the legislature in making our ruling in this case. Therefore, we respectfully disagree that there is clear and convincing evidence that grounds exist for termination in this case under TenmCode Ann. § 36 — 1—113(g)(3)(A) and we reverse the order terminating C.H.K.’s parental rights to the extent that it is based upon that authority.
VI. BEST INTERESTS
Although the issue is raised as to whether there is clear and convincing evidence that a termination of parental rights would be in J.W.P.’s best interests, as is required under of Tenn.Code Ann. § 36 — 1—113(b), it would be premature to address that issue absent the establishment of grounds for termination under subsection (a) of that statute.
VII. CONCLUSION
For the foregoing reasons, the judgment of the Trial Court is vacated in part, reversed in part, and remanded for further action consistent with our decision herein. Costs of appeal are adjudged against the State of Tennessee, Department of Children’s Services.