IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 28, 2012 Session

**IN RE EMILIE A. M.**

**Appeal from the Circuit Court for Bradley County**
**No. V10389    Hon. J. Michael Sharp, Judge**

**No. E2011-02416-COA-R3-PT-FILED-SEPTEMBER 17, 2012**

This is a termination of parental rights case in which Lisa C. and Michael C. filed a petition to terminate the parental rights of Christopher M. to his child. The paternal grandparents filed an intervening petition to adopt the child. The trial court terminated Christopher M.'s parental rights and granted Lisa C. and Michael C.'s petition to adopt the child. Christopher M. appeals the termination of his parental rights. Following our review, we conclude that the court erred in relying upon Tennessee Code Annotated section 36-1-113(g)(3) in terminating Father's parental rights and reverse that ground of termination. Additionally, we are unable to review the remainder of the court's decision because the final order failed to set forth findings of fact as required by section 36-1-113(k) in support of its second ground of termination. Accordingly, we reverse the termination of Father's parental rights based upon section 36-1-113(g)(3) and vacate the remainder of the final order. The case is remanded for entry of an order that sets forth sufficient findings of fact and conclusions of law regarding the termination of Christopher M.'s parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part; Vacated in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which, HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Richard L. Elliston, Cleveland, Tennessee, for the appellant, Christopher M.

Philip M. Jacobs, Cleveland, Tennessee, for the appellees, Lisa C. and Michael C.

Sarah E. McKinney-Coleman, Cleveland, Tennessee, guardian ad litem for the minor, Emilie A. M.

# OPINION

# I. BACKGROUND

Emilie A. M. ("the Child") was born out of wedlock on January 18, 2007 to Crystal J. ("Mother") and Christopher M. ("Father"). Father was arrested in September 2008 for various theft offenses and was eventually sentenced to six years in prison following his guilty plea conviction. While Father was incarcerated, Mother was tasked with providing for the Child and her other children who are not the subject of this appeal. The Child was removed from Mother's care in January 2009 and placed with Mother's relatives, Lisa C. and Michael C. ("the Adoptive Parents"). Following a hearing, the court found that Mother tested positive for "amphetamines, opiates, and THC," that she "kept the illegal drugs in her home in the presence" of the Child, and that she had "allowed persons in the home who have used illegal drugs around" the Child. The court adjudicated the Child as dependent and neglected and awarded temporary custody of the Child to the Adoptive Parents.

Approximately one year later, Father's parents, Howard M. and Sophia M. ("the Grandparents"), filed a petition for custody of the Child, alleging that they were concerned about the Child's safety and about the adequacy of the home of the Adoptive Parents. The case was set for hearing in the juvenile court; however, when the hearing date arrived, the Adoptive Parents announced that they had filed a petition in the circuit court to terminate Mother and Father's parental rights to the Child. The actions in the juvenile court were stayed, and the Grandparents subsequently filed a motion in the circuit court to intervene in the termination proceeding. Grandparents alleged that they would be suitable parents for the Child and requested to adopt the Child. The court granted the petition to intervene.

Relative to Father, the grounds asserted for termination were abandonment for his willful failure to pay child support and visit the Child and the persistence of conditions that led to the Child's removal. A hearing was held on the termination petition, and a separate comparative fitness hearing was held regarding the petitions for adoption filed by the Adoptive Parents and Grandparents. The record on appeal does not contain a transcript or statement of the evidence relative to either hearing. However, a final order and an addendum to the final order were presented for this court's review on appeal.

In the final order, the court stated,

The court wishes to note that the parental rights of [Father] were terminated after having been given a full hearing and/or the right to be heard.

The remainder of the order was dedicated to the court's comparative fitness analysis of the Adoptive Parents and the Grandparents. While the court did not issue any findings relative to the termination of Father's parental rights, the court mentioned Father in its comparative fitness analysis. Specifically, in discussing the importance of continuity in the Child's life, the court acknowledged that the Child had been left with the Adoptive Parents "during the years prior to [her] removal" and that Father was in and out of her life, while the Adoptive Parents had "been the only stable, consistent and permanent part of [her life]." In discussing evidence of physical or emotional abuse of the Child, the court stated, in pertinent part,

> The court finds that despite the knowledge of drug abuse and signs that the natural parents did not have the means to support the [Child], [the Grandparents] took no steps to remove the [Child] and accept custody. The court also has concerns that [the Grandparents] would be inclined to allow [Father] great contact with and influence over [the Child] whenever he is released from prison. This is not in the best interest of the [Child].

In considering the character and behavior of those frequenting the potential parents' house, the court stated, in pertinent part,

> Very little proof was provided for factor 8. Both parties offer new "siblings" and extended families that will provide influence. The real issue is the character and fitness of the biological parents if given the opportunity to reenter the [Child's life]. . . . [Father] has yet to prove that he is a stable, drug free person. [Father], based upon his testimony, appears to believe that his drug abuse, alcohol abuse and criminal history have had little or no effect on the [Child]. His future influence on the [Child] is questionable at best and is of great concern to this court. Based on the [Grandparents'] testimony and [Father's] testimony, the court believes that he will be allowed to be a part of the [Child's life] once he is released from prison, if [the Grandparents] have [the Child]. The court does not find this to be in the best interest of [the Child] given all the facts and circumstances present in this case.

The court ultimately held that it was in the "manifest best interest[] of the [Child] to be adopted by the [Adoptive Parents]." In so finding, the court acknowledged that the Child had "suffered tremendous instability and abuse based upon the neglect of [her] biological parents" and that placement with the Adoptive Parents would provide "much needed consistency and stability in [her life] that ha[d] been somewhat unstable as caused by [her] biological parents." Realizing that it did not enter any findings relative to Father, the court entered an addendum to the final order several months later.

We will recount the entirety of the addendum because the wording of this document is extremely important to our analysis on appeal. The court stated,

This matter came to be heard on the [second] day of November, 2011 before the Honorable J. Michael Sharp presiding over the [c]ircuit [c]ourt of Bradley County, Tennessee upon a request made by the [c]ourt to address questions with the [f]inal [d]ecree. Based on the statement of counsel for the parties, this [c]ourt finds that there is a typographical error in the [o]rder that referred to Joshua [D.], said reference was to [Father]. This [c]ourt finds that the [f]inal [d]ecree terminated the rights of [Father and Mother]. As further emphasis and for clarity, this [c]ourt finds by clear and convincing evidence that the grounds for termination are as follows:

(A) Pursuant to [Tennessee Code Annotated section] 36-1-113(g)(1), each party abandoned the [Child] by failure to support and failure to visit.

(B) Pursuant to [Tennessee Code Annotated section] 36-1-113(g)(3) the [C]hild [] has been removed from the home of the parent or guardian by order of a court for a period of [six months]; and the conditions that led to the [C]hild's removal or other conditions that in all reasonable probability would cause the [C]hild to be subjected to further abuse or neglect and that, therefore, prevent the [C]hild's safe return to the care of the parent(s) or guardian(s), still persist. There is little likelihood that these conditions will be remedied at an early date so that the [C]hild can be safely returned to the parent(s) or guardian(s) in the near future; and the continuation of the parent or guardian and child relationship greatly diminishes the [C]hild's chances of early integration into a safe, stable and permanent home.

It is therefore

ORDERED, ADJUDGED, and DECREED as follows:

1. The [f]inal [o]rder entered by the [c]ourt is amended to correct the typographical error that referred to Joshua [D.], said reference is to [Father].

2. The paternal rights of [Father and Mother] are terminated by clear and convincing evidence pursuant to [Tennessee Code Annotated section] 36-1-113(g)[(]1[)] and 36-1-113(g)(3)(A)(B)(C).

3. By clear and convincing evidence, it is in the best interest[] of the minor [Child] to be adopted by [the Adoptive Parents].

Father's timely appeal followed.[1]

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the statutory grounds relied upon by the trial court in terminating Father's parental rights applied to him when he was incarcerated at the time of removal.

B. Whether the order terminating Father's parental rights failed to make sufficient findings regarding the statutory grounds for termination.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

---

[1]Grandparents and Mother did not appeal the court's decision.

-5-

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004).

Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

As a threshold issue, we must address Father's assertion that the statutory grounds for termination cannot be applied to him because he was incarcerated. The termination of Father's parental rights was based upon his alleged abandonment of the Child and his alleged failure to remedy the conditions which led to the Child's removal. *See* Tenn. Code Ann. § 36-1-113(g)(1), (3). Father argues that the statutory ground of abandonment cannot apply to him because his incarceration prevented him from visiting or supporting the Child. He also contends that the statutory ground of persistence of conditions cannot apply to him because he was incarcerated at the time of the Child's removal.

For the purposes of termination proceedings, abandonment means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). Likewise, when the parent is incarcerated when the petition is filed, abandonment means that:

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's

incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv). Accordingly, we reject Father's assertion that the statutory ground of abandonment cannot apply to him because his incarceration prevented him from visiting or submitting support. The court need only consider the four months immediately preceding a parent's incarceration in considering whether the statutory ground of abandonment is applicable to an incarcerated parent. Termination may also be based upon a parent's conduct prior to incarceration if that conduct exhibited a "wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Relative to the second statutory ground supporting Father's termination of his parental rights, Tennessee law provides that a court may terminate parental rights when:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3). Termination of parental rights requires clear and convincing evidence of all three factors noted above. *In re Valentine*, 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874.

Here, the Child was removed based upon a finding of dependency and neglect relative to Mother's drug abuse. While it can be argued that the Child was also removed because Father was unavailable to care for the Child due to his incarceration, the pertinent question

in a termination proceeding based upon the statutory ground of persistence of conditions is whether Father has continued to neglect the Child. *State v. C.H.K.*, 154 S.W.3d 586, 592 (Tenn. Ct. App. 2004). Father has not had an opportunity to properly care for the Child or continue in his alleged neglect of the Child because he has been incarcerated since before the time of removal. *Id.* Additionally, the mere fact that he is incarcerated cannot serve as "other conditions that in all reasonable probability would cause the [C]hild to be subjected to further abuse or neglect" when he received a sentence of six years. Tenn. Code Ann. § 36-1-113(g)(3)(a); *see also C.H.K.*, 154 S.W.3d 586 at 592 (providing that the legislature intended "that there must be proof that the parent is incarcerated under a sentence of at least ten years before the mere fact of incarceration will constitute grounds for termination of parental rights"). Accordingly, we conclude that the trial court erred in relying on section 36-1-113(g)(3) as a statutory ground for termination. We reverse the trial court's finding that termination of Father's parental rights was appropriate based upon the alleged persistence of conditions that led to removal. This conclusion does not end our inquiry because only one statutory ground for termination of parental rights listed in section 36-1-113(g) is sufficient to support an order terminating parental rights when termination is in the best interest of the child. *In re Audrey S.*, 182 S.W.3d at 860.

B.

Father asserts that the court failed to make sufficient findings of fact in support of its decision. He notes that the final order simply contains a best interest comparison of the potential adoptive parents and that the addendum to the final order recites the statutory grounds for termination without setting forth any findings of fact. Adoptive Parents respond that we must presume that the court's order was supported by the evidence because Father failed to submit a transcript or statement of the evidence. They assert that in terminating Father's parental rights, the court considered Father's history of drug and alcohol abuse and his inability to support the Child. They contend that termination of Father's parental rights was appropriate given his conduct prior to his incarceration.

Relative to Father's alleged abandonment of the Child, the trial court failed to make any specific findings of fact regarding Father's failure to pay support or visit. The court did not clarify that it was considering the four months immediately preceding Father's incarceration when concluding that Father had abandoned the Child. Likewise, the court did not find that Father's failure to support or visit the Child was willful. Instead, the court merely listed the statutory ground in its addendum to the final order. "[D]efining abandonment as the mere non-payment of support [is] unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (citing *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)). "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than

-9-

accidental or inadvertent." *In re Audrey S.*, 182 S.W.3d at 863. "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64. Additionally, "'[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). The court did not discuss any of the willfulness factors in the addendum to its final order terminating Father's parental rights. We acknowledge that the trial court made a few remarks regarding Father in its comparative fitness analysis in the final order. The court remarked that Father had been in and out of the Child's life prior to her removal and that he had failed to take responsibility for his criminal actions. However, these remarks were general in nature and did not relate to Father's alleged willful failure to visit or support the Child in the four months preceding his incarceration.

The adoptive parents argue that this court must presume that there was sufficient evidence to support the court's conclusory finding that Father abandoned the Child because Father failed to submit a transcript or statement of the evidence for this court's review. Ordinarily, this argument might have merit. However, in termination proceedings, the court may be required to furnish a transcript for an indigent parent appealing the termination of that parent's parental rights. *M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996) (holding that the court may not withhold a record of sufficient completeness from indigent parents who appeal the termination of parental rights); *see also In re J.M.C.H.*, No. M2002-01097-COA-R3-JV, 2002 WL 31662347, at *4 (Tenn. Ct. App. Nov. 26, 2002) (providing that an indigent parent was entitled to "the availability of a record of trial evidence and events which is sufficiently complete to allow an appellate court to review the evidence in accordance with applicable standards" when her parental rights had been terminated and a transcript or statement of the evidence was not available).

Moreover, in termination proceedings, the court is required to "enter an order that makes *specific* findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." Tenn. Code Ann. § 36-1-113(k) (emphasis added). This case is of particular concern because the court was made aware of the fact that it did not issue *any* findings of fact or conclusions of law in respect to its termination decision. Yet, in its addendum to the final order, the court failed to remedy the error and merely listed the statutory grounds for termination. "Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making." *In re Audrey S.*, 182 S.W.3d at 861 (citing *In re Swanson*, 2 S.W.3d at 188). A mere recital of the statutory grounds for termination is insufficient in cases of this nature. Requiring trial courts to issue "specific findings of fact and conclusions of law facilitate appellate review and

promote just and speedy resolution of appeals." *Id.* Accordingly, we "must remand the case with directions to prepare the required findings of fact and conclusions of law." *Id.* (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec.23, 2003)).

## V. CONCLUSION

The judgment of the trial court is reversed as to the court's finding that termination of Christopher M.'s parental rights was supported by Tennessee Code Annotated section 36-1-113(g)(3). The remainder of the judgment of the trial court is vacated, and the case is remanded for the trial court to enter a new order containing findings of fact and conclusions of law relating to the termination of Christopher M.'s parental rights. Costs of the appeal are taxed to the appellees, Lisa C. and Michael C.

_____
JOHN W. McCLARTY, JUDGE