IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs May 30, 2014

## IN RE TAYLOR A. B., ET AL.

**Appeal from the Chancery Court for Tipton County**
**No. 29650     Martha Brasfield, Chancellor**

---

**No. W2013-02312-COA-R3-PT - Filed July 31, 2014**

---

This appeal involves the termination of parental rights. The appellant father was incarcerated for the murder of the mother of the children at issue in this case. The foster parents, relatives of the children's mother, filed this petition to terminate the father's parental rights and adopt the children. After a trial, the trial court granted the petition and terminated the father's parental rights. The father now appeals. On appeal, he challenges only the trial court's finding that termination of his parental rights is in the best interest of the children. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which ALAN E. HIGHERS, P. J., W.S., and J. STEVEN STAFFORD, J., joined.

Frank Deslauriers, Covington, Tennessee, for Respondent/Appellant G.A.B.

Rebecca S. Mills, Ripley, Tennessee, for Petitioner/Appellees B.T. and S.T.

### OPINION

#### FACTS AND PROCEEDINGS BELOW

Respondent/Appellant G.A.B. ("Father") and J.M.B. ("Mother") married in 1985. Their two sons, Taylor A.B., born in September 1996, and Devin A.B., born in November 1999, are the subject of this appeal.

Tragedy struck these children in October 2004, when Taylor was 8 years old and Devin was almost 5 years old. On October 11, 2004, Father murdered Mother. He was immediately

incarcerated, and he remained incarcerated pending trial for the death of the children's mother. Three years later, in November 2007, Father was convicted of first degree murder. He was given a life sentence and is not eligible for release until the year 2061.

Meanwhile, in the wake of the murder, relatives on both the maternal and paternal sides of the family expressed a desire to take custody of the children. The Juvenile Court of Tipton County, Tennessee appointed a guardian ad litem for the children and the Tennessee Department of Children's Services ("DCS") conducted home studies and background checks on the interested parties. Ultimately, DCS and the guardian ad litem recommended that the Juvenile Court grant custody of the children to a maternal cousin, Petitioner/Appellee S.T.

In February 2005, the Juvenile Court concluded that S.T. was "a fit and proper person to have custody" and awarded custody of both children to S.T. and her husband, Petitioner/Appellee B.T. (collectively "Petitioners"). The children have remained in the care and custody of the Petitioners since that time.

The Juvenile Court's order also awarded unsupervised visitation to both the maternal and paternal grandparents. Unfortunately, the visitation with the paternal grandparents proved problematic. Father began calling his mother's home while the children were visiting, and Father's mother would have the children speak to him. The paternal grandmother also read the children letters from Father. The Petitioners felt that such contacts with Father were not in the children's best interest and asked the Juvenile Court for guidance. They were given permission by the Juvenile Court to "do what was best." The Petitioners ended the paternal grandparents' unsupervised visitation with the children but allowed them to visit the children at the Petitioners' home for an hour each month.

In April 2012, the Petitioners filed a petition in the Chancery Court of Tipton County, Tennessee to terminate Father's parental rights and to adopt Taylor and Devin.[1] By the time the termination petition was filed, Taylor was 15 years and old and Devin was 12 years old, and they had lived with the Petitioners for over 7 years. As grounds for termination of Father's parental rights, the petition recited Father's incarceration and subsequent life sentence, his wanton disregard for the children in that Father had murdered their mother, and his failure to support or have any contact with the children in the four months preceding the filing of the petition.

---

[1] The request for relief in the original petition asked only for the termination of Father's parental rights. The Petitioners later filed an amended petition adding a request that the trial court establish a parental relationship between the Petitioners and both children, to enable the Petitioners to adopt the children.

Father sent the trial court a letter opposing the petition. The trial court appointed counsel to represent Father in the action and also appointed an attorney to represent the children.

In May 2013, the trial court conducted the trial on the petition to terminate Father's parental rights. Father was represented at trial. In view of Father's incarceration, he participated by telephone. The trial court heard testimony from Father, the Petitioners, DCS officials, and from Taylor and Devin as well.

In his testimony, Father emphasized that the appeal of the denial of his post-conviction petition regarding his conviction for the murder of the children's mother was still pending. As of the date of the trial on the petition to terminate his parental rights, however, Father's conviction stood and he was not eligible for parole until 2061. He acknowledged that he had not paid any child support and asserted that he had been denied contact with the children. Father argued that the trial court should not terminate his parental rights and should not permit the Petitioners to adopt the children and change their last names, because the children would be able to make their own decisions about such matters when they reached majority.

The Petitioners testified they could provide for the children financially and meet all of their physical, emotional, and medical needs, including Devin's special needs.[2] The evidence indicated that the Petitioners are very involved in the children's lives, including their extracurricular activities. Taylor and Devin testified that they want to be adopted by the Petitioners and that they want no contact with Father because he killed their mother. The testimony indicated that Taylor was having short-term behavioral issues stemming from the loss of his mother, the imprisonment of his father, and his desire for resolution of the court proceedings and to be adopted by the Petitioners. At the conclusion of the trial, the trial court took the matter under advisement.

On June 21, 2013, the trial court entered an order granting the relief requested in the petition. The order summarized much of the trial testimony and included findings of fact and conclusions of law.

As grounds for termination, the trial court found in its order that the younger son was under the age of 8 when Father was incarcerated and sentenced to more than 10 years imprisonment, thereby establishing grounds for termination under Tennessee Code Annotated

---

[2]The evidence at trial indicated that Devin has an auditory processing disorder and that the Petitioners were meeting the child's special needs associated with the disorder.

§ 36-1-113(g)(6).[3]  As to both children, the trial court held that the Petitioners had established grounds for termination under Tennessee Code Annotated § 36-1-113(g)(7)[4] by proving that Father was convicted of the intentional and wrongful death of the children's other parent.[5]

The trial court then addressed whether termination of Father's parental rights was in the children's best interest:

> The children's mother died in October 2004.  The children have lived with the Petitioners since February 2005.  That Father has been convicted of 1st Degree Murder of the children's mother and is serving a life sentence in prison. Although Father has a pending appeal and maintains his innocence, the Court can only consider the jury's verdict and cannot wait on the outcome of the appeal as the children have been in the custody of the Petitioners for eight (8) years.
>
> The lives of both children have been forever changed as they have lost two parents.  The children were very young at the time.  They were ages 5 and 8.
>
> Father has a debilitating disease, and wants to wait until the boys are eighteen years old to determine if the adoption is what they desire.  However, the Court

---

[3] Tennessee Code Annotated § 36-1-113(g)(6) sets forth the following ground for termination of parental rights:

> (6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court . . .

Tenn. Code Ann. § 36-1-113(g)(6) (2013).

[4] Tennessee Code Annotated § 36-1-113(g)(7) sets forth the following ground for termination of parental rights: "(7) The parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian."  Tenn. Code Ann. § 36-1-113(g)(7) (2013).

[5] The trial court's order also found that the children had been removed from Father's custody for six months, that Father had no meaningful relationship with his children, that a change of caretakers or physical environment was not possible at any time in the near future, and that killing the children's mother was a form of "emotional and/or psychological abuse" of the children by Father.  These findings appear to relate to persistent conditions under Section 36-1-113(g)(3) and severe child abuse under Section 36-1-113(g)(4). However, in a later order denying Father's motion to alter or amend, the trial court clarified that its original order terminating Father's parental rights relied only on grounds under Tennessee Code Annotated §§ 36-1-113(g)(6) and (7).  As noted above, grounds for termination are not at issue in this appeal.

feels the children need the stability and legality of family and need to know they are with the Petitioners.

The Tipton County Juvenile Court Judge awarded custody of the children to the Petitioners because they were deemed to be the most suitable although Father's family members also requested custody.

That the paternal grandmother was awarded visitation with the children but unsupervised visits were stopped by the Petitioner, [S.T.], after the grandmother read letters to the children from their father and had them speak to him on the phone. Although the paternal grandmother has since visited the children at the Petitioners' home once per month for approximately 1 hour at a minimum, the Court does not find that such visitation is a factor for not finding grounds to terminate.

There is clear and convincing evidence that the children's emotional, psychological, and medical needs are being met by the Petitioners, they are doing well in school, and are very attached to the Petitioners. They are in a safe and loving environment with the Petitioners.

The Petitioners are involved in every aspect of the children's lives, and are both actively involved with the children's sports. [S.T.] is a baseball coach and [B.T.] helps to run the concession stand during the children's events.

The Court further finds that the actions of Petitioner, [S.T.], when she spanked the child, Taylor, may not have been appropriate, but she did not cause bruises and DCS believes the children should be adopted. The Court does not find that this incident gives rise to reason to disallow adoption.

Considering all of this evidence, the trial court found by clear and convincing evidence that termination of Father's parental rights was in the best interest of both Taylor and Devin. Consequently, the trial court's order terminated Father's parental rights as to both children and awarded the Petitioners "complete custody, control, and guardianship" of the children "with the right to place the children for adoption and to consent to such adoption in *loco parentis*."

Father filed a motion to alter or amend the judgment. In the motion, he argued that his criminal appeal was not yet final and that the Petitioners did not prove by clear and convincing evidence that termination of his parental rights was in the children's best interest. The trial court denied the motion. It noted that, under ***In re Audrey S***., 182 S.W.3d 838

(Tenn. Ct. App. 2005), in a proceeding on termination of parental rights, the trial court need not look past a conviction or a sentence in order to find grounds for termination under Tennessee Code Annotated § 36-1-113(g)(6).

In its order on Father's motion to alter or amend, the trial court also elaborated on its holding that termination of his parental rights was in the best interest of the children:

> (a) It is uncontroverted that the Respondent is incarcerated, is currently serving a life sentence in prison, and is thus unable to provide a stable home and financial support for the children;
>
> (b) The Respondent has provided no financial support to the children since his incarceration in 2007;
>
> (c) Both children testified that they do not want any contact with the Respondent because they believe him to be responsible for the death of their mother;
>
> (d) Both children expressed a desire to be legally adopted by the Petitioners.
>
> The Court finds that the Petitioners have proven by clear and convincing evidence that (1) grounds exist for the termination of the Respondent's parental rights, and (2) termination of his parental rights is in the best interests of the children.

Father now appeals.

## ISSUE PRESENTED AND STANDARD OF REVIEW

On appeal, Father raises one issue: "Did the trial court err in finding that [Petitioners] had met their burden of proof that it was in the children's best interest to terminate [Father]'s parental rights?"

Proceedings on the termination of parental rights are governed by statute in Tennessee. A party with standing to seek the termination of the parental rights of a biological parent must first prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1) (Supp. 2013). Second, the party seeking termination must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the profound consequences of a decision to terminate parental rights, courts apply a higher standard of proof. The statutory elements required for termination of parental rights must be proven by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *see In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re Askia K.B.*, No. W2010-02496-COA-R3-PT, 2011 WL 4634241, at \*7 (Tenn. Ct. App. Oct. 7, 2011). Evidence that meets the clear and convincing evidence standard "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Askia K.B.*, 2011 WL 4634241, at \*7. In contrast to the preponderance of the evidence standard, clear and convincing evidence demonstrates that the truth of the facts asserted is "highly probable" as opposed to merely "more probable than not." *In re M.A.R.,* 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). This heightened burden of proof serves to minimize the risk of an erroneous decision. *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

Because of the heightened burden of proof in these cases, the appellate courts adapt the customary standard of review set forth in Rule 13(d) of the Tennessee Rules of Appellate Procedure. *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). Under this modified standard, we first review the trial court's findings of fact to determine whether they are supported by the preponderance of the evidence; the trial court's findings of fact are presumed correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *see Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We then determine whether the combined weight of the facts, as found by the trial court or supported by the preponderance of the evidence, clearly and convincingly establishes all of the elements required to terminate the biological parent's parental rights. *In re Tiffany B.*, 228 S.W.3d at 156; *In re S.M.*, 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004). The trial court's conclusions of law are reviewed *de novo* on the record, according them no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *In re Askia K.B.*, 2011 WL 4634241, at \*7; *In re Tiffany B.*, 228 S.W.3d at 156.

## ANALYSIS

A biological parent's right to the care and the custody of his child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Adoption of A.M.H.*, 215 S.W.3d at 809; *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn.1993); *In re Giorgianna H.*, 205 S.W.3d 508, 515 (Tenn. Ct. App. 2006). While this right is fundamental and superior to the claims of other persons, it is not absolute. *In re Giorgianna H.*, 205 S.W.3d at 515 (citing *DCS v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004)). It continues

without interruption only so long as the parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. ***Blair v. Badenhope***, 77 S.W.3d 137, 141 (Tenn. 2002); ***In re M.J.B.***, 140 S.W.3d at 653.

As noted above, Tennessee statutes require the party who seeks to terminate the parental rights of a biological parent to prove by clear and convincing evidence both grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c). In this appeal, Father does not challenge the trial court's findings on grounds. However, in an abundance of caution, we have reviewed the evidence submitted on grounds for termination and find that the record contains clear and convincing evidence to support the trial court's holding under Tennessee Code Annotated §§ 36-1-113(g)(6) and (7). We go on, then, to consider Father's arguments as to the best interest of the children.

On appeal, Father argues that the trial court did not properly weigh the statutory factors set forth in Section 36-1-113(i) to be considered in determining whether termination of parental rights is in the best interest of the child. He emphasizes that the trial court's order "did not set forth a complete analysis of the factors." The factors on which the trial court relied, he contends, "would not change, such as stability, regardless of whether or not adoption was granted" and should not be weighed in favor of termination. He concedes that, due to his incarceration, he will not be able to provide a stable home and financial support for the children, but says that this "is only one factor." Father argues that a decision to maintain his parental rights would have little to no effect on the children's stability and insists that it is best to let the children make their own decisions in a few years, far in advance of Father's release eligibility. Finally, Father notes that the children's desire for termination of parental rights is not among the factors enumerated in Section 36-1-113(i), and argues that it was improper for the trial court to consider the children's wishes in its decision.

A finding of grounds to terminate the parental rights of a biological parent does not necessarily mean that termination of parental rights is in the child's best interest. ***Dept. of Children's Servs. v. S.M.D.***, 200 S.W.3d 184, 201 (Tenn. Ct. App. 2006). The evidence on grounds can be considered in the best interest analysis, but once grounds are established, the focus of the inquiry shifts from the parent's conduct to the child's best interest:

> The ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights proceeding. The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g). Once a

parent has been found to be unfit, the interests of the parent and the child diverge. While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child.

* * *

The child's best interests must be viewed from the child's, rather than the parent's, perspective.

*In re Audrey S.*, 182 S.W.3d at 877-78 (internal citations omitted). Therefore, in this appeal, our focus is on the best interest of Taylor and Devin, from their perspective.

In a proceeding on termination of parental rights, the determination of the child's best interests is a fact-intensive inquiry. *Id.* at 878. As Father noted, in Tennessee Code Annotated § 36-1-113(i), our Legislature set forth a number of factors to be taken into account in ascertaining the best interest of the child.[6]

---

[6] Subsection (i) of Tennessee Code Annotated § 36-1-113 lists the following factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or

(continued...)

We first dispense with Father's argument that the trial court's holding on best interest should be reversed because the trial court did not expressly evaluate each factor listed in Section 36-1-113(i). Our Supreme Court has held that neither the trial court nor the appellate court need engage in "a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case." *In re Audrey S.*, 182 S.W.3d at 878. This argument is without merit.

Father also argues that, in view of his lengthy incarceration and the Petitioners' status as the children's legal guardians, maintaining his parental rights would have no adverse effect on the children's stability. In *In re Audrey S.*, involving termination of the parental rights of an incarcerated mother, our Supreme Court decisively rejected this very argument:

> In advancing the third consideration, [the mother] seeks to transform her lengthy incarceration from a statutory ground for terminating her parental rights into a factor that militates against termination. In essence, [the mother] is arguing that precisely because she has disabled herself from participating in her children's day-to-day lives by engaging in criminal conduct that resulted in her incarceration, it cannot be in the best interests of [the children] to terminate her parental rights. This argument borders on hubris. It also completely ignores the compelling need of [the children] for a stable and permanent home life that will no longer be subject to disruption at the whim of [the mother].

*In re Audrey S.*, 182 S.W.3d at 880-81. We reject this argument as well.

Father argues that he tried to maintain contact with the children through phone calls and letters but the Petitioners, once they learned that Father's mother was facilitating his contact with his sons, put a stop to it. Citing *In re Taylor B.W.*, 397 S.W.3d 105 (Tenn. 2013), he

---

[6](...continued)
> guardian consistently unable to care for the child in a safe and stable manner;

> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

argues that denying an incarcerated parent contact with his children should weigh against termination of parental rights.

Under the specific facts in **Taylor B.W.**, the trial court found that the father had frustrated the efforts of the incarcerated mother to keep in contact with the parties' children, while she was incarcerated and after her release from prison. **Id.** at 110, 113. The appellate court found that the evidence did not preponderate against the trial court's factual finding. **Id.** at 113. Significantly, in that case, the trial court "found that all nine of the non-exclusive [statutory] factors weighed against a termination of [the mother's] parental rights." **Id.** at 114. In contrast, in the case at bar, the trial court did not find that *any* of the enumerated statutory factors weighed in Father's favor. Thus, even if we assume *arguendo* that this factor weighs in Father's favor, *all* of the remaining factors support the termination of his parental rights. Indeed, even Father cannot point to any other factor in his favor. Therefore, this argument clearly will not carry the day for Father.

Finally, we consider Father's argument that the children's desire to have the Petitioners adopt them is not listed as a statutory factor to be considered in determining the best interest of the children, so the trial court was in error to consider it. We reject this argument as well. The nine best interest factors contained in Tennessee Code Annotated § 36-1-113(i) are clearly "a non-exclusive list" of factors to be considered. **In re Giorgianna H.,** 205 S.W.3d at 523. In determining the best interest of the subject child in a proceeding to terminate the parental rights of the biological parent, the trial court is to weigh the evidence not only in light of the factors enumerated in the statute, but also "any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests." **Id.**

Moreover, provided the trial court exercises due caution, "it is permissible, indeed important, to give significant weight to the child's testimony" on his own best interests. **Maxwell v. Woodard**, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *18 (Tenn. Ct. App. May 31, 2013) (child's testimony on preference in context of child custody).[7] Under the facts of this case, where Father took the life of the mother of these children, the trial court appropriately considered and respected the children's desire to see Father's parental rights terminated, freeing them to be adopted by the Petitioners. We do as well.

---

[7]This Court has noted that "due caution is in order in considering the testimony of a child" on his preference, to guard against factors such as an adult pressuring a child into expressing a particular preference. **Maxwell**, 2013 WL 2420500, at *18. In the case at bar, there is no hint in the record of any such improper influence on the subject children.

We find no error in the trial court holding that terminating Father's parental rights is in the best interest of both Taylor and Devin. This holding pretermits all other issues raised on appeal. Accordingly, we affirm.

**CONCLUSION**

The decision of the trial court is affirmed. Costs on appeal are assessed against Respondent/Appellant G.A.B., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE