IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2017 Session

## IN RE BRANTLEY B.[1]

**Appeal from the Chancery Court for DeKalb County**
**No. 2016-AD-3      Ronald Thurman, Chancellor**

_____

**No. M2016-02547-COA-R3-PT**

_____

Mother appeals the termination of her parental rights to her son resulting from a petition for termination and adoption filed by her son's Father and Stepmother. The trial court terminated Mother's rights on the grounds of abandonment by failure to support and persistence of conditions, and on a finding that termination was in the child's best interest. Upon a thorough review of the record, we reverse the termination of Mother's rights on the ground of persistence of conditions; we affirm the termination of her rights on the ground of abandonment by failure to support and the holding that termination is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
in Part and Affirmed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Rachel M. Thomas, Nashville, Tennessee, for the appellant, Lydia P.

Kelsy Miller, Cookeville, Tennessee, for the appellees, Justin B. and April B.

### OPINION

The child that is the subject of this action, Brantley B., was born to Lydia P. ("Mother") and Justin B. ("Father") in February 2012; Mother and Father were not married at the time of his birth. On December 19, 2012, Father filed a petition alleging that he had taken custody of Brantley because Mother was using drugs and was suicidal,

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

was purchasing drugs in Brantley's presence, and was addicted to drugs and in need of treatment; Father sought to have Brantley declared dependent and neglected and to be awarded custody of him. An ex parte order was entered on that date, holding that there was probable cause to believe that Brantley was dependent and neglected and restraining Mother from interfering with Father's custody, and setting a preliminary hearing for January 3, 2013. The matter was heard on that date, and on January 8 the court entered an agreed order appointing counsel for Mother, appointing a guardian ad litem, and continuing the December 19 restraining order.

On March 31, 2016, Father and his wife April B. ("Stepmother"), collectively "Petitioners," filed a petition to terminate Mother's parental rights to Brantley and for adoption by Stepmother. The petition alleged, *inter alia*, that Mother had a "long-standing substance abuse problem," and that she had failed to pay child support during the time Brantley had been in Father's custody. As grounds for termination, the petition asserted abandonment by failure to pay child support in the four months preceding the filing of the petition, Tennessee Code Annotated sections 36-1-113(g)(1) and -102(1)(A)(i), and persistence of conditions, Tennessee Code Annotated section 36-1-113(g)(3); the petition also alleged that terminating Mother's rights was in Brantley's best interest. Mother filed an initial response, *pro se*; she subsequently retained counsel, who also filed an answer to the petition. A guardian *ad litem* was appointed, and the case proceeded to trial on October 25, 2016, at which Mother, Stepmother, Father, Mother's father, and Mother's mother testified.

The court entered an order on November 12, 2016, holding that both grounds for termination were established by clear and convincing evidence and that it was in Brantley's best interest that her parental rights be terminated. Mother appeals, asserting that neither the grounds for termination nor the best interest determination were proven by clear and convincing evidence.

## II. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766–69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proven by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.* In this regard, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

## III. ANALYSIS

### A. Abandonment by Failure to Support

Abandonment is identified as a ground for termination in Tennessee Code Annotated section 36-1-116(g)(1) and defined in section 36-1-102(1)(A), which reads in pertinent part:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A). A failure to support is "'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to

3

do so, and has no justifiable excuse for not doing so." *In re Audrey*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005).

With respect to this ground, the court made the following finding:

In this case, as it relates to the ground of abandonment, the Respondent testified that she has not paid child support in the four months preceding the filing of the petition, the filing being March the 31st of 2016. She also testified that she worked during this period of time. By her own admission, she was capable of paying child support, and there was no proof presented to indicate that she was unable to work and provide for the child. The evidence showed that she has worked in at least eight different positions during the child's life, most of which were paying her more than minimum wage, yet she paid no support. She also had very little living expenses at [the] time, due to not paying rent. Under relevant case law, whether there is a child support order or not, a parent has a moral obligation to support their children. Even so, there are a number of orders, some of them being made an exhibit to these proceedings that set forth a child support obligation through the Juvenile Court of Dekalb County. From the proof, there has been no support paid.
* * *
Therefore, the Court finds by clear and convincing evidence that Respondent willfully abandoned the child by failure to pay child support.

Mother concedes, and her testimony along with that of Father and Stepmother, confirms, that she did not pay any child support during the four months preceding the filing of the petition, November 30, 2015, to March 30, 2016 (the "relevant time period" herein). She contends that her failure to pay support was not willful because she had a rent obligation during the time period; she also asserts that she had a justifiable excuse because "the child support office[] represent[ed] that the case was closed."

With respect to her awareness of the duty to support Brantley, Mother cites her testimony that "Judge Cook told me to go through the state" but she was "never instructed" to pay Father directly, and argues that she was "not aware of a stand-alone duty to support — she believed that she was supposed to pay child support through the child support office." This argument, however, is contrary to the law and the evidence.

"All parents have a duty to support their children." *In re M.J.B.*, 140 S.W.3d 643, 655 (Tenn. Ct. App. 2004). The record includes an order entered on June 5, 2014, in the dependent and neglect proceeding, setting Mother's child support obligation at $46.85 per week, which Mother was ordered to pay directly to Father. Mother also testified that she was aware of her child support obligation and that Brantley needed clothes and food,

4

which only Father was providing. Accordingly, there is clear and convincing evidence that Mother was aware of her duty to support Brantley.

As to the capacity or ability to pay her support obligation, Mother argues on appeal:

> In its Order, the trial court cited erroneous facts regarding whether Mother was employed and had to pay rent. Had the trial court considered that Mother was living somewhere that did cost rent and was unemployed for a significant portion of the four-month period, it might have found that Mother was unable to provide financial support during this time period.

Mother does not include citations to the testimony or other parts of the record in support of this argument.

Mother testified that she became employed in August or September 2015 at Fast Break Express in Lebanon, making $9 per hour and working 32 to 35 hours per week, and was fired in December 2015 for stealing;[2] that she was employed by her landlord in the months of February and March of 2016 at a rate of $200 per week. This is clear and convincing evidence that Mother had the ability to pay.

With respect to her living arrangements and rent, Mother testified that she lived with her boyfriend on Maple Street in Lebanon "for four or five months" before moving to Castalian Springs with him in December 2015 until May 2016; the couple took in a roommate for two or three months who paid "100 a month or 200" dollars toward the rent. She also testified as follows:

> Q. Any of these other places that you've lived, did you have to pay rent? Did you have to pay rent at your father's house?
> A. No.
> Q. Did you have to pay rent at any of the transitional living houses?
> A. Yes.

As regards other expenses during the relevant time period, Mother testified:

> Q. . . . Now, before we filed this petition for termination, you would agree with me that you were spending money on drugs –
> A. Yes, ma'am.
> Q. -- for the past four years?
> A. Yes.

---

[2] Mother testified that she stole money at work in order "[t]o buy drugs," was convicted of felony theft, and was sentenced to three years of probation.

Q. Okay. And how were you taking those drugs?
A. I was snorting them.
Q. And you were buying these off the street; is that right?
A. Yes, ma'am.
Q. Now, I believe at one point in the beginning, were you spending anywhere between 3- to $400 a week?
A. I mean, it could be, yes, easily.

Mother's testimony established that she was not living at a transitional living house during the relevant time period, as she testified that she lived with her boyfriend in Lebanon and then in Castalian Springs at that time. The record does not preponderate against the court's finding that Mother "had very little living expenses at [the] time, due to not paying rent." The evidence clearly establishes that Mother was able to work and did work portions of the relevant time period and had the ability to pay support.

Mother contends that she had a justifiable excuse for not paying support, based on a letter dated December 7, 2015, from the Child Support Enforcement Division of the Office of the District Attorney General, as well the statement she attributes to the juvenile judge quoted earlier in this opinion. Upon our review, we do not agree that this evidence supports Mother's argument.

The letter from the Child Support Enforcement office states:

Ms. P[.],

In response to your message left, the case was closed in July 2015. However, that does not do away with the order, that just means that the child support obligation is not being enforced through the Child Support Enforcement office, at this time.

Thank you,

/s/ Donna Prall
CSSII

Mother testified that the juvenile judge "told me to go through the state."

Mother's obligation to pay support directly to Father was set in the June 5, 2014 order entered in juvenile court; the record does not show the reason that the Child Support Enforcement Office became involved. In any event, the letter only advises Mother that the office had closed its case and would not be involved further "at this time"; the letter specifically states that the obligation established in the order remained. Similarly, Mother's testimony regarding what the juvenile judge purportedly told her,

6

given the lack of context, completeness, or further explanation, has no probative value to this inquiry, particularly in light of the requirement in the order that payments be made directly to Father.

In our consideration of this matter, we are mindful of the instruction in *In re Audrey S.* that a parent's "[f]ailure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." 182 S.W.3d at 864 (internal citations omitted). Neither the letter nor the judge's purported comment restrained, prevented, or excused Mother from paying support. To the contrary, the record contains a printout from the Tennessee Department of Human Services Child Support Enforcement Services, for the period December 1, 2012 through November 2, 2016, showing that the only child support payments Mother made, totaling $923.00, were made over the four month period of June 13 through October 10, 2016, well after the relevant time period.

Mother also argues that trial court erred in failing to consider her testimony that she provided toys, books, a backpack, candy, and clothes, as well as gifts on various holidays "as circumstantial evidence of a lack of willfulness." Mother made the same argument before the trial court, which held that: "Any support paid by the [Mother] would have been considered token under the case law and not in compliance with the child support guidelines." We agree with the court's conclusion.

Tennessee Code Annotated section 36-1-102(1)(B) defines "token support" as "support [that], under the circumstances of the individual case, is insignificant given the parent's means." The items mentioned by Mother are items and gifts that did not assist Father in providing for Brantley on a meaningful and continuous basis. Further, Mother testified that the money she earned or obtained, which could have been used for Brantley's support, was used to support her addiction. The evidence does not preponderate against the trial court's holding that Mother's support was token.

We conclude that the record clearly and convincingly establishes that Mother's failure to pay support was willful within the meaning of Tennessee Code Annotated section 36-1-102(1)(D); accordingly, we affirm the termination of Mother's parental rights on the ground of abandonment by failure to support.

### B. Persistence of Conditions

Mother challenges the trial court's conclusion that the Petitioners proved, by clear and convincing evidence, the ground of persistence of conditions.

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tennessee Code Annotated section 36-1-113(g)(3) when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

With respect to this ground, this court has held that "Tenn[essee] Code Ann[otated] [section] 36-1-113(g)(3) applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874. The Ex Parte Restraining Order entered in the dependency and neglect proceeding on December 19, 2012, states only that "[b]ased on the allegations in the petition, there is probable cause to believe that the minor child[ is] dependent and neglected and will suffer irreparable harm if a restraining order is not issued at this time." While the *ex parte* order includes a finding of probable cause that Brantley was dependent and neglected, the record does not contain an adjudication or any finding in that regard. Given the high standard of proof applicable to parental termination cases, we cannot assume that the requirement that there be a finding that Brantley was dependent, neglected, or abused has been met or that there is clear and convincing evidence that Brantley was found to be dependent or abused. In the absence of same, and given the fundamental constitutional rights at issue and heightened standard of proof applicable to this case, we are unable to affirm the holding that termination on the ground of persistence of conditions was established by clear and convincing evidence. Accordingly, we reverse the termination of Mother's rights on the ground of persistence of conditions.

**C. Best Interest Determination**

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature has set out a list of factors at

Tennessee Code Annotated section 36-1-113(i) for the courts to follow in determining the child's best interest.[3] The list of factors in the statute "is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't. of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)). As we consider this issue, we are also mindful of the following instruction in *White v. Moody*:

> [A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

---

[3] The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004) (internal citations and footnote omitted). In this inquiry, we are instructed that:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis. *White v. Moody,* 171 S.W.3d [187] at 194 [(Tenn. Ct. App. 2004)].

*In re Audrey S*., 182 S.W. 3d at 878.

The trial court concluded that termination of Mother's rights was in Brantley's best interest, after considering all nine statutory factors. Mother challenges whether Petitioners proved, by clear and convincing evidence, that terminating her parental rights was in his best interest, contesting the court's findings with respect to factors (1), (2), (4), (5), (6), (7), (8), and (9). We have carefully reviewed the record, including the testimony cited by Mother in support of her arguments, and conclude that the evidence does not preponderate against the trial court's factual findings that: (1) Mother has "started to see the light" and that "while there has been supervised visitation, there has been no proof that the home would be safe otherwise"; (2) Mother "did not complete or comply with the efforts by both the Juvenile Court and the Department of Children's Services to try to kick her habit" and "left several rehabilitation programs against their advice" and "resided in as many a[s] thirteen different locations during the child's four years"; (3) Mother has maintained regular visitation; (4) Stepmother "has been the mother figure here" while "the bond between the child and [Mother] is more in a buddy friendship than it is a parent-child relationship"; (5) that there is no request by Mother for a change of custody; (6) that "[t]here's no proof that [mother's drug abuse] affected the child"; (7) that there is no proof that Father and Stepmother's homes, as well as the homes of the maternal grandmother and grandfather, are not healthy or safe but that Mother had "a significant drug addiction to the point that she attempted to fake a drug screen with the Juvenile Court and has failed a number of drug screens"; (8) that Mother has been diagnosed as manic-depressive bipolar, receives medication treatment, and has attempted and made threats of suicide; and (9) Mother has not paid child support.

With respect to factor (4) Mother's argument centers on her belief that the "side-by-side comparison of Mother vs. Step-mother in which Step-mother wins is completely inappropriate." We do not agree that what the court did in its best interest analysis was inappropriate in any respect. The specific factor at issue was whether a meaningful relationship had been established between Mother and Brantley. The court determined that Mother had a relationship with Brantley, and that the character of that relationship is

"more in a buddy friendship than it is a parent-child relationship"; the court attributed this to the fact that Stepmother had been "acting as the parent." The trial court clearly put the finding in the proper context when it prefaced the holding by saying "[Mother] has a relationship but it's not the same. . . . The Court must determine the child's best interest." The court then examined each woman's relationship with Brantley and determined that Stepmother had a more meaningful relationship with Brantley; the evidence does not preponderate against this finding.

Upon our consideration of the record before us, we conclude that the combined weight of the facts amount to clear and convincing evidence that termination of Mother's parental rights is in Brantley's best interest.

## IV. CONCLUSION

For the foregoing reasons, we reverse the court's termination of Mother's rights on the ground of persistence of conditions; in all other respects, we affirm the judgment.

_____
RICHARD H. DINKINS, JUDGE