IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 15, 2018 Session

# IN RE EMILY J. ET AL.[1]

**Appeal from the Juvenile Court for Williamson County**
**No. 35624-94JC1-2017-JT-2      Sharon Guffee, Judge**

_____

**No. M2017-01959-COA-R3-PT**

_____

Mother appeals the termination of her parental rights to two children on the grounds of abandonment by failure to support and persistence of conditions. Upon our review, we conclude that the record contains clear and convincing evidence that the conditions which led to the children's removal from Mother's home persisted and that termination of her rights is in the children's best interest; however, the evidence of abandonment by failure to support is not clear and convincing. Accordingly, we reverse the judgment in part and affirm the termination of her rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part and Affirmed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

David M. Jones, Franklin, Tennessee, for the appellant, Holly R.

Deana C. Hood, Franklin, Tennessee, for the appellees, Lynn G., William G., and John J.

**OPINION**

## I.     FACTUAL AND PROCEDURAL HISTORY

Two children, Emily (born February 2005) and Tyler (born December 2006) are the subject of this termination case. The children have lived with their paternal aunt and uncle, Lynn and William G., since March 2016, when the children's mother, Holly R., ("Mother") was involved in two automobile accidents in Atlanta, Georgia, while under

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

the influence of heroin, methamphetamines, and marijuana; Mother was arrested and convicted on multiple charges including possession of a controlled substance and possession of marijuana. While Mother remained in jail, the children's aunt and uncle filed a petition seeking to have the children declared dependent and neglected; the petition was heard on May 9, 2016. The juvenile court entered an order on July 13 reciting that Mother and her attorney were present at the May 9 hearing and that Mother stipulated that the children were dependent and neglected due to her drug use and positive drug screen for multiple substances; the court ordered that that the children remain in the legal custody of Lynn and William G.

On March 16, 2017, Lynn and William G., ("Petitioners") filed a petition to terminate Mother's parental rights on the grounds of abandonment by failure to support and persistence of conditions. The children's biological father, John J. ("Father"), joined in the petition, seeking to surrender his parental rights to the children. A hearing was held over two days in August 2017, at which seven witnesses testified: Ricky R., the maternal grandfather of the children; Melissa R., Mother's stepmother; Mother; Dr. Jay Woodman, a clinical psychologist and the children's therapist; Cheyenne R., Mother's sister; Lynn G.; and William G. At the time of the hearing, Mother was incarcerated, and had been since July 10 on a charge of aggravated robbery.[2]

By order entered September 5, the trial court: terminated Mother's rights on the grounds of abandonment for failure to pay child support and persistence of conditions and upon its finding that termination was in the children's best interest; confirmed Father's surrender of his parental rights and terminated those rights; and appointed the aunt and uncle as the guardians and legal and physical custodians of the children. Mother appeals the termination of her rights.

## II.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated under certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights,

---

[2] Mother testified that she pled guilty to facilitation of robbery and expected to be sentenced in September 2017.

only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766–69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.* In this regard, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

## III. ANALYSIS

### A. Abandonment by Failure to Support

Abandonment is identified as a ground for termination in Tennessee Code Annotated section 36-1-116(g)(1) and defined in section 36-1-102(1)(A), which reads in pertinent part:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A). "All parents have a duty to support their children." *In re M.J.B.*, 140 S.W.3d 643, 655 (Tenn. Ct. App. 2004); *see also* Tenn. Code Ann. § 34-1-102. A failure to support is "'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005).

The trial court made factual findings relative to this ground, concluding that Mother knew of her obligation to support, that her "failure to pay child support is willful, that [her] conduct consists of intentional or voluntary acts or failure to act . . . that [she] had the capacity to do so . . . made no attempt to do so and had no justifiable excuse for not doing so." Mother contends that the court erred in finding that clear and convincing evidence existed to sustain this ground for termination.

The petition for termination was filed on March 16, 2017; accordingly, the court correctly determined that the relevant time period was November 15, 2016 through March 15, 2017. With respect to whether Mother was aware of her duty to pay support, the court held:

> Mother initially testified on August 9, 2017 that she knew of her obligation to support her children. There was not an order for support, but she was given a notice of child support and a worksheet by counsel for Petitioners. She also testified that she was told of her obligation by her attorney in May of 2016.

Mother does not argue that she was not aware of her duty to support the children, and the record affirms the court's finding that she testified at the termination hearing that she was made aware of the duty at the May 9, 2016 dispositional hearing in the dependent and neglect proceeding. She also acknowledges receiving a letter from Petitioners' counsel in October of 2016, containing a Notice of Support and child support worksheet, and advising that failure to pay support was a ground for termination of her parental rights. Even in the absence of a court order, however, parents are presumed to be aware of their duty to support their children. *See* Tenn. Code Ann. § 36-1-102 (1)(H) ("Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's obligation to support such parent's child or children."); *see also In re M.J.B.*, 140 S.W.3d at 655.

It is undisputed that Mother did not pay any support; she contends that she had a justifiable excuse for failing to pay support, i.e., that "the [October 2016 notice and child support worksheet] in relation to the filing of the termination petition and the communication-breakdown with the Paternal Aunt and Uncle rise to the level of significant restraint on Mother's attempts to logistically provide support…." This

argument is without merit; there is no evidence in the record that Mother was prevented or restrained from paying support for her children.

In *In re Audrey S.*, this Court instructed that a parent's "[f]ailure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." 182 S.W.3d at 864 (internal citations omitted). The letter Mother received from Lynn and William G.'s counsel (a copy of which was sent to Mother's previous counsel) does not restrain Mother from paying support in any way; to the contrary, it advises her of the necessity to pay support and the possible consequences of failure to pay. While the May 9, 2016 order adjudicating the children dependent and neglected states that any contact between Mother and the children "shall be based on the children's therapist, Dr. Jay Woodman's recommendation," the restraint referenced therein addresses visitation, not support. Mother admitted that she did not attempt to support the children; she testified that she did not pay support because she "knew financially they didn't need anything from me. I wasn't in a position to help myself, much less take care of the kids." The record is clear that Mother was not restrained by Petitioners in any effort to support the children.

The evidence in the record, however, is not clear whether Mother worked or had income during the four-month period preceding the filing of the petition; neither is it clear as to Mother's expenses during that period. The court's only finding was that "[t]he last time [Mother] worked was in 2009," and it made no findings as to Mother's expenses. While there is some testimony in the record with respect to Mother's income and expenses, the testimony does not establish what her income and expenses were during the period at issue. As a consequence, there is not clear and convincing proof from which to conclude that Mother had the capacity to pay support during that period. While we are mindful of the difficulty Petitioners had with developing the record of Mother's income and expenses due to her memory lapses,[3] it was their burden to establish proof of her income, inability to work, or willful unemployment as well as her expenses during the relevant time period. Given the gravity of the rights at issue, we cannot conclude that the record clearly and convincingly establishes that Mother's failure to pay support was willful within the meaning of Tennessee Code Annotated section 36-1-102(1)(A). Accordingly, we reverse the trial court's finding that Petitioners proved the ground of abandonment by failure to support by clear and convincing evidence.

---

[3] Mother's testimony is inconsistent at times; she testified that her years of drug usage had affected her memory.

**B. Persistence of Conditions**

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tennessee Code Annotated section 36-1-113(g)(3) when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Mother first argues, based on her reading of *In re Audrey S.*, that this ground is not applicable because the children were in the custody of relatives, rather than in foster care, as that term is defined by Tennessee Code Annotated section 37-1-102(b)(15).[4] Contrary to Mother's argument, our opinion in that case cannot be construed to impose a requirement that the children be placed in foster care in order for this ground to be available. We did not hold that this ground is inapplicable when the children are placed with relatives; indeed, *In re Audrey S.* involved children who were in the custody of relatives, as is the case here. *Id.* at 849-850, 852, 857-58. We held that "Tenn[essee] Code Ann[otated] [section] 36-1-113(g)(3) applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *Id.* at 874. The record in the case at bar makes clear that children were placed in the legal custody of Petitioners in a proceeding that resulted in a finding that they were dependent and neglected;[5] inasmuch

---

[4] Tennessee Code Annotated section 37-1-102(b)(15) reads:

> "Foster care" means the temporary placement of a child in the custody of the department of children's services or any agency or institution, whether public or private, for care outside the home of a parent or relative, by blood or marriage, of the child, whether the placement is by court order, voluntary placement agreement, surrender of parental rights or otherwise[.]

[5] The Order adjudicating the children dependent and neglected reads in pertinent part:

> 1. The parties stipulate as to adjudication that the minor children are dependent and neglect[ed] pursuant to Tenn. Code Ann. § 37-1-102(b)(12) due to mother's drug use and positive drug

as section 36-1-113(g)(3) does not require that the children be placed in foster care for this ground to be available, Mother's argument is without merit.

In the order terminating Mother's rights, the court made many factual findings with respect to this ground, as follows:

8. The maternal grandfather and step maternal grandmother both testified about Mother's long history of drug abuse and recent criminal charge of aggravated robbery in August of 2016, as well as other criminal charges when the children were removed from Mother. Mother admitted heroin use to them.

9. Mother admitted her drug use. She testified she would use heroin when her children were home. She would go to the car or into her bedroom. One time Emily came out to the car, opened the car door and a bag with needles fell out.

10. Mother testified that the children were removed from her custody in March of 2016. She was kicked out of her Section 8 housing in September of 2016 and she has been homeless since then. She slept in her car a couple of times and currently is incarcerated after her bond was revoked for failing a drug screen (Exhibit #1).

11. Mother admitted she has been using drugs continuously since her children were removed, except for periods of incarceration: April 24th, 2017 to June 6, 2017 and July 10, 2017, to present. On April 24th, 2017, she failed a ten panel drug screen by testing positive for every controlled substance on the screen.

12. Mother testified her parental rights were terminated in 2003 on another child. She denied it was for manufacturing meth. She testified she was just using meth from age 13 to 20 and had no job or home.

13. Mother testified (1) she never completed any drug treatment; (2) she left in-patient treatment in 2016 after three weeks; and (3) she admitted she used drugs contemporaneously with undergoing outpatient treatment at Pathways in 2016.

14. Mother agreed she has not done much to get her children back. She testified that she is okay with being homeless. She testified she has taken no actions to obtain housing. She admitted she has surrounded herself with dangerous people.

15. Mother testified she believes it is in the children's best interest to be adopted. She is not asking the Court to return the children.

___

screen for multiple substances, instability as she is unemployed and has pending criminal charges.
2.  As to disposition, the minor children will remain in the legal custody of the Petitioners, Lynn and William G[.] who shall be specifically authorized to enroll the children in school and to consent to any and all necessary medical and psychiatric care for the children and to obtain or provide consent to obtain any records pertaining to the minor children.

16. Mother testified she is awaiting sentencing on facilitation of aggravated robbery. The proof is uncontroverted the children were removed from Mother due to her drug use, lack of stable income and housing. Mother actually stipulated to a dependency and neglect finding in the adjudication of the dependency and neglect Petition in May of 2016. The children have been removed from the home of the mother for a period of six months or longer. Mother continues to use drugs. She tested positive for multiple substances. She is unemployed, has pending criminal charges and is incarcerated. None of the conditions have been remedied. In fact, the Court finds Mother's circumstances have actually gotten worse since the children were removed. Testing positive for all ten substances on a ten-panel drug screen in April of 2017 is proof that this Court has never heard. There is little likelihood the conditions will be remedied at an early date. Dr. Woodman's testimony was that he would like to see a minimum of one year's worth of sobriety. Mother is not anywhere even close to that. The continuation of the parent/child relationship really diminishes these children's chances of a safe and stable permanent home.

Mother does not challenge any of the above as being unsupported by the record. Upon our review, we conclude that the court's findings are fully supported by the testimony of Mother; Ricky R., the maternal grandfather of the children, who testified about Mother's drug addiction since January 2015; Melissa R., Mother's stepmother, who testified that Mother admitted that she was using heroin and that the children told her about Mother's drug usage; and Dr. Woodman, who testified that he considered Mother's drug usage as "an incredibly serious drug addiction problem" and discussed his counseling with the children in that regard.

Citing testimony from Dr. Woodman that he had not had any counseling sessions with Mother and had not observed Mother and the children in a therapeutic setting, Mother argues that there is insufficient evidence to support the third element of the ground of persistence of conditions, specifically, that "her difficulties with maintaining sobriety is insufficient to . . . clearly and convincingly conclude that the continued Parent/Child relationship greatly diminishes the children's integration into a safe, stable, and permanent home." We have considered Mother's argument on appeal and the evidence on which she relies but are unpersuaded.

Succinctly put, the conditions which led to the children's removal persisted from the time of they were placed in Petitioners' custody to the time of trial and, in light of Mother's continuing drug addiction and recent criminal charges, showed no prospect of improving. The statute evinces a policy that "early integration into a safe, stable and permanent home" is desired; the evidence cited by Mother, however, shows that she desires to further delay the children's ability to integrate into the Petitioners' home in hopes that she can remedy her condition at some undetermined time in the future.

Mother herself testified that it was in the children's best interest that they be adopted by Petitioners, a tacit acknowledgment that the children were entitled to "early integration into a safe, stable, and permanent home." Coupled with Dr. Woodman's testimony that the children desired to be adopted by Petitioners and that they are upset by the idea that they might have to see or interact with their Mother, we conclude that the evidence is clear and convincing that the continuation of Mother's relationship with the children hinders their ability to integrate into the Petitioners' safe, stable, and permanent home.

Accordingly, we hold that there is clear and convincing evidence of each element of Tennessee Code Annotated section 36-1-113(g)(3), and we affirm the finding that Petitioners proved this ground.

### C. Best Interest

Once a ground for termination has been proven, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature has set out a list of factors at Tennessee Code Annotated section 36-1-113(i) for the courts to follow in determining a child's best interest. The list of factors in the statute "is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court examined each factor, determining which were applicable, and making findings of fact with respect to the applicable factors, to wit:

> **(1) Whether the parent has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent.** There has been no adjustment of Mother's circumstances. Mother's circumstances have actually gotten worse with increased drug use and serious felony criminal charges.
> **(2) Whether the parent has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible.** Mother has not accessed any social services since the children have been removed at all. In fact, she has not had any treatment. She left treatment without completing it.

**(3) Whether the parent has maintained regular visitation or other contact with the child.** This factor is not applicable since there was a no contact order until Dr. Woodman found it appropriate.

**(4) Whether a meaningful relationship has otherwise been established between the parent and the child.** These children are angry. They do not desire to see their mother. They have said, "Please, tell her we love her and we're safe."

**(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition.** At this point in time, it would be devastating to make a change in these children's lives. They are struggling now in their adjustment and just beginning to feel safe in their new home. Even Mother admits she is not asking for them to be returned to her at this time.

**(6) Whether the parent, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household.** There has been some testimony as to corporal punishment, particularly of Tyler. Certainly there is emotional and psychological abuse by Mother as to both children due to her substance abuse. Emily was placed in a position of having to be in a parental role to care for her brother because of Mother's substance abuse.

**(7) Whether the physical environment of the parent's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner**. Certainly this factor is one the Court considers and puts much weight in. There was consistent sustained criminal activity in the home with Mother's and boyfriend's drug use in and outside the home. It was not safe. The home was a dangerous place for these children and the unhealthiest environment they could grow up in.

**(8) Whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child.** Mother is certainly unstable due to her substance abuse. She is unavailable due to her incarceration to provide a safe and stable environment.

**(9) Whether the parent has paid child support consistent with the child support guidelines.** The testimony was by her own admission that she paid no support or provided any type of gifts or given anything toward the children's support.

The Petitioners, who are the paternal aunt and uncle of the children, have bonded with the children. The children want to be adopted, and they

10

certainly deserve permanency. Even if Mother began her sobriety now, she is years away from being able to parent these children.

(Emphasis in original.) The court then proceeded to hold that termination was in the children's best interest.

For various reasons, Mother challenges the court's findings with respect to factors (1), (2), (3), (4), (6), and (9). She does not contend that the findings are not supported by clear and convincing evidence or cite to evidence in the record that preponderates against these findings; rather, in her arguments, she urges that the trial court gave inappropriate weight to the findings. Upon our review, the findings are fully supported by clear and convincing evidence in the record.

Mother argues that termination was not in the children's best interest because there was too much distance between Madison County where she lived and the children's residence in Williamson County for her to visit or participate in therapy with Dr. Woodman; because she was economically disadvantaged; and because there was a breakdown in communication between her and the Petitioners.

As we consider her arguments, we are mindful of the following instruction in *White v. Moody*:

> [A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004) (internal citations and footnote omitted).

We have considered Mother's arguments, each of which focus on her desire to retain her parental rights but overlook the paramount concern of our analysis: the children's best interest. We have carefully considered the record in this case and conclude that it clearly and convincingly establishes that termination of Mother's parental rights is in the children's best interest.

11

**IV.** **CONCLUSION**

For the foregoing reasons, we reverse the termination of Mother's rights on the ground of abandonment by failure to support; we affirm the judgment terminating her rights on the ground of persistence of conditions and on the holding that termination is in the best interest of the children.

_____
RICHARD H. DINKINS, JUDGE